# APPENDIX.

J. W. MULLEN and T. S. COOPER v. J. M. MORROW, J. W. COBB and P. M. BROWN.

*Election Law—Appointment of Registrars.*

(Proceeding before Associate Justice FURCHES.)

(Election Case from Mecklenburg.)

1. Under the provisions of Chapter 185, Acts of 1897, the County Board of Elections is not required in all cases to appoint three registrars for each voting precinct, but to appoint one qualified voter of the precinct from each one of the political parties, and such board has no right or authority to appoint a member of one party for another party.

2. That said Board has no authority to appoint two registrars from the same party in the same voting precinct.

Under Chapter 185, Acts of 1897, amending Chapter 159, Acts 1895, and upon the application of J. W. Mullen, chairman of the Republican party of Mecklenburg County and T. S. Cooper, chairman of the Populist party of said county, I issued a Rule upon the defendants on the 20th day of September, 1898, returnable before me at Raleigh on the 27th day of September, in which they are required to show cause why the prayer of the petitioners should not be granted. At the time and place designated the defendants appeared and answered, being represented by P. D. Walker and F. M. Shannonhouse, Esquires, as their attorneys, while the petitioners were represented by J. W. Graham and D. K. Pope, Esquires, as their attorneys.

This statute being of recent date has received no construction from the courts so far as I know, and it be-

comes my duty to put a construction upon it, for the first time.

The board in making the appointments of registrars for Mecklenburg County have acted upon the idea that it was their duty to appoint three registrars for each voting precinct. This is so, if there is any one in the precinct filling the requirements of the law, to appoint; but not, if there is not.

The Act, Chapter 185, Section 7, says, they "shall appoint one citizen and qualified voter for each of the political parties of and for each election precinct, who shall be able to read and write the English language, and who shall be known, for the duties required of them under this Act as registrars of election in their respective precincts." Thus it appears that the board are not required to appoint three registrars for each voting precinct, but to appoint one qualified voter of the precinct from each one of the political parties, Democrat, Populist and Republican; and that the board has no right or authority to appoint a member of one party for another party; that the Board had no authority to appoint two registrars from the same party in the same voting precinct.

And it being admitted by defendants that J. A. Blackney, J. R. Porter and Banks Potts, are Democrats, but were appointed in the place of Populists, there being no Populists to appoint, thus making two Democratic registrars and one Republican in the precinct, was not authorized by the law, and they are hereby removed.

W. S. Liddell was appointed in the place of a Populist for the reason that there was no Populist in the precinct to appoint. The defendants say he is a Republican and the petitioners say he is a Democrat. I shall not decide this question, as it makes no difference which he is. If he is a Republican, as defendants allege, the

Republicans have two, and if he is a Democrat as petitioners allege, the Democrats have two. Let it be the one way or the other, the appointment is unauthorized, and he is hereby removed.

The Act, of 1897, amending the Act of 1895, makes a material change in regard to the appointment of registrars and judges of election. Under the Act of 1895 the chairmen of the different political parties had the right to designate the registrars and judges to be appointed for their respective parties, and the Clerk was only their agent and had no discretionary powers, if the wishes of the chairmen were made known, on or before the first Monday in September. *Harkins* v. *Cathey*, 119 N. C., 649. But under the Act of 1897 neither the State Chairmen nor the County Chairmen have any legal right to designate the parties to be appointed. This is left with the board within prescribed limits. The board now occupy much the same position the Clerk did under the Act of 1895, where the Chairman of a party did not file his lists in time. *Harkins* v. *Cathey*, *supra*.

R. W. Smith swears that he is a Republican, has always voted that ticket and expects to do so now. As the presumption is with defendants, the burden is on the petitioners to show the error and that they are entitled to the relief asked. I will give Mr. Smith credit for knowing what he is and that he correctly states the same. His appointment is sustained. *Harkins* v. *Cathey*, *supra*.

No. 2 is withdrawn, as Wood refused to act, and another registrar has been appointed in his place that seems not to be objected to.

No. 4, J. P. Wilson, says he is a Republican in National politics, but in State and County politics he votes the Democratic ticket. This in my opinion dis-

qualifies him as a Republican registrar. It is like a juror when two parties are on trial in the same case, though he may be favorably disposed as to one of them if he has formed and expressed an opinion adverse to the other, he would be disqualified.

No. 5, T. B. Guthrie, stands on the same footing as J. P. Wilson, and my opinion as to him is the same as in the Wilson case.

No. 6, Fred Oliver, has refused to serve and John C. Davidson has been appointed in his place by the board. It seems this should have been done by the Clerk. But as there seems to be no objection to him, this appointment is ratified by me.

No. 7, Walter Donaldson is asked to be removed on account of inebriety. The burden is on the petitioners. They have one affidavit to that effect, but the defendant has several affidavits going to show that, while he does become intoxicated, he is usually not so; that he is industrious, supports his family, and is qualified to act as registrar. This is an important appointment he has, and if he has any pride of character he will not get drunk while he is acting as registrar. I think the petitioners have failed, and I decline to remove him.

No. 8, R. J. Ferguson seems to me to be a Republican. Petitioners have failed to show that he is not, and I decline to remove him.

No. 9, S. W. Stewart says that he cannot read and write sufficiently to discharge the duties of registrar; that he can write his name, but this is done mechanically. I must take what he says to be true. (*Harkins* v. *Cathey, supra*). And it does not seem to me that a man that can only write his own name is qualified to register the names of others. I must remove him.

No. 10, J. O. Turbefill: Respondents offer no affidavit to sustain their allegation that he is a Republican.

The only evidence they offer of this is an exhibit showing that he was appointed as a Republican registrar in 1896; when the petitioners show, by the affidavit of W. B. Williamson, that Turbefill on the 15th of September, 1898, told him that he was a Democrat. He may not have been a Republican in 1896, or, if he was, he seems to have changed since that time, and is a Democrat now. (*Harkins* v. *Cathey, supra*). He is removed.

No. 11, G. A. Morrow: This allegation in the petition must have been made under a mistake as to what party he was appointed for. It seems he was appointed as a Populist, and that he is a Populist. I decline to remove him.

No. 12 and 13 withdrawn. as to Osborne White and W. R. Barnett, and these appointments stand.

### POPULIST DEMANDS.

1. J. W. Moore, appointed as a Populist, having declined to serve, and J. H. Wilson having been appointed in his place, this objection is withdrawn, and I approve and ratify this appointment.

2. J. F. Woodsides, objected to as being a Democrat: Respondents offer no evidence tending to show that he is not a Democrat, while petitioners offer the affidavit of T. A. Austin that Woodsides told him that he was not a Populist; that he had been a Prohibitionist, "but was now a Democrat, and one of the managers in the late Democratic primaries." He must be removed.

3. J. H. Hutchinson, appointed as a Populist: Respondents offer no evidence tending to show that he is a Populist, while petitioners offer the affidavit of W. S. Clanton, that he saw said Hutchinson in the Democratic county convention, representing his township as a delegate. He is removed.

No. 7. J. C. Dennis, appointed as a Populist: There

is no direct evidence as to what he is now, and as the burden is on the petitioners, I think they fail to make good their allegation. (*Harkins* v. *Cathey, supra*).

8. H. H. Hoover, appointed as a Populist: Defendants offer the affidavit of E. O. Johnson that Hoover had voted and acted with the Populist party, and the petitioners offer the affidavit of E. R. Spirris that he was present when E. O. Johnson served the notice on Hoover that he had been appointed a registrar for the Populist party, on the 12th of September, when Hoover then and there declared that he was a Democrat, and that he could not stand the Populists.". From this evidence, I do not think him a Populist, and that he must be removed.

As to those removed for the reason that they were appointed in the place of Populists, where were no Populists in the precinct, there will be no one appointed in their stead. As to the others removed under the rulings in this proceeding, there should be others appointed in their stead. This is the most difficult part of my duty, as I know very few persons in the precincts from which they have been removed.

These remarks have been made without intending to reflect upon the honor or integrity of the parties removed. It is probable that they would all have done their duty as registrars. But the law provides who may and who may not be registrars, and this we must all observe and obey. The learned counsel for defendants in his argument stated that in election times party feeling ran high, and when questions came up to be decided they were most likely to decide them in favor of their side. This should not be so, but unfortunately it is often too true. And for this reason, as I suppose, the Legislature balanced the matter as best it could, by providing

each party a representative on the board, if it be possible to have one.

In filling the vacancies made by this order, I shall have to rely principally upon the recommendations made by the chairmen of the Populist and Republican parties. I am not bound by this, but it may serve as some evidence of fitness. (*Harkins* v. *Cathey, supra*).

Order of the Court: In addition to those removed where there will be no appointments to fill their places, to-wit: W. S. Liddell, J. A. Blackney, J. R. Porter and Banks Potts, the following other persons appointed registrars are removed, to-wit: J. P. Wilson, Charlotte township, Ward 2, Precinct 2, and J. S. Leary is appointed in his stead. In Ward 2, Precinct 3, Charlotte township, T. B. Guthrie is removed and R. E. McDonald is appointed in his stead.

In Providence township, Precinct 1, S. W. Stewart is removed, and W. M. Kiser appointed in his stead.

In Deweese township, Precinct 2, J. O. Turbefill is removed, and W. B. Sims appointed in his stead.

In Charlotte township, Ward 1, Precinct 2, J. F. Woodsides is removed, and J. P. Sossaman is appointed in his stead. In Ward 4, Precinct 3, Charlotte township, J. W. Hutchinson is removed, and J. W. Meacham is appointed in his stead.

In Paw Creek township, Precinct 2, H. H. Hoover is removed, and M. L. Kistler appointed in his stead.

All the appointments made in this order are appointments of the parties named to be and act as registrars of election for the fall election in 1898, county, State and National.

The Sheriff of Mecklenburg County will serve this order upon the defendants and the parties herein appointed registrars immediately upon the receipt of the

same, and make due return to me as to the manner and time of serving the same.

The Clerk of the Supreme Court will at once issue this order to said Sheriff.

The defendants are adjudged to pay the costs of this proceeding, to be taxed by the Clerk of the Supreme Court of North Carolina.

This September 28, 1898.

D. M. FURCHES,
*Associate Justice
of the Supreme Court of North Carolina.*

It is accordingly so ordered.